# REAL ESTATE PURCHASE AGREEMENT

THIS AGREEMENT is made by and among 925 N. DAMEN, LLC ("Seller") and G7 INVESTMENTS, LLC ("Purchaser").

### RECITALS:

A.  Seller is the owner of the real property commonly known as 925 N. Damen Avenue, City of Chicago ("City"), County of Cook, State of Illinois, (the "Property").

B.  Seller desires to sell, transfer and convey the Property to Purchaser as more fully described at paragraph 1(a) hereof and Purchaser desires to purchase said Property according to the provisions hereinafter set forth.

NOW, THEREFORE, in consideration of the foregoing recitals each of which is made a contractual part hereof, and of the mutual representations, covenants, undertakings and agreements hereinafter contained, Seller and Purchaser agree as follows:

1.  **AGREEMENT OF SALE AND PURCHASE.** Seller agrees to sell, transfer and convey and Purchaser agrees to purchase, all for a purchase price and subject to and upon each of the terms and conditions hereinafter set forth, the following:

    a.  **Property.** The land legally described in Exhibit A attached hereto and made a part hereof, together with all right, title and interest of Seller in and to all easements, tenements, hereditaments, privileges and appurtenances thereunto belonging (the "Land"), and each of the buildings, improvements and structures located on the Land. The Improvements and the Land are hereinafter collectively referred to as the "Real Property."

    b.  **Personalty.** All personal property and other tangible property, in which Seller has an interest, now or hereafter located on the Land or the Improvements and/or used in connection with the operation or maintenance thereof, including without limitation the items described in Exhibit B attached hereto and made a part hereof hereinafter collectively referred to as the (APersonalty").

    c.  **Intangible Property.** All intangible property in which Seller has an interest, now or hereafter used in connection with the operation or maintenance of the Improvements, the Land, or the Personalty, as described in Exhibit C attached hereto and made a part hereof, (collectively referred to as the AIntangible Property").

    The Land, Improvements, Personalty and Intangible Property are hereinafter sometimes collectively referred to as the "Property" or the "Project". On the Closing Date, Seller shall convey the Property to Purchaser.

2.  **PURCHASE PRICE AND PAYMENT TERMS;**

## ALLOCATION OF PURCHASE PRICE.

a. **Purchase Price.** The purchase price to be paid by Purchaser to Seller for the Property (the "Purchase Price") shall be Six Hundred Fifty Thousand Dollars and 00/100 ($650,000.00).

b. **Payment of the Purchase Price.** The purchase price shall be payable in the form of wire transfer at closing less earnest money, prorations and closing costs as provided herein.

3. **EARNEST MONEY.** Within one (1) day of acceptance of the Agreement by Seller, Purchaser shall deposit with Title Insurer earnest money in an amount equal to Fifty Thousand Dollars ($50,000.00) (the "Earnest Money").

4. **TITLE MATTERS.**

a. **Documents Evidencing Title.** The following documents evidencing title shall be obtained:

   i. Seller shall obtain and deliver, or cause to be delivered, to Purchaser, within ten (10) days from the Effective Date, a commitment for an ALTA standard owner's policy of title insurance from Guaranty National Title Insurance Company (the "Title Insurer").

   ii. the cost of the title commitment, including issuance of the title insurance policy, shall be paid by Seller.

   iii. Seller shall obtain approval of this Agreement by the Bankruptcy Court.

5. **CONDITIONS TO CLOSING.**

a. **Seller's Conditions.** It shall be a condition to Seller's obligation to close under this Agreement that on or prior to closing:

   i. Purchaser shall have complied with all of its covenants and agreements under this Agreement; and

   ii. Purchaser shall have delivered to Seller the Purchase Price, net of any prorations, and all of the closing documents listed at section 8 (b).

6. **CLOSING AND RELATED MATTERS.** The closing shall take place 21 days after bankruptcy court approval, unless an earlier date is mutually agreed to by Seller and Purchaser (the "Closing Date"). The closing of the transaction contemplated herein shall take place at the Chicago Loop offices of Guaranty National Title Company 36 W. Randolph St. Chicago, IL.

7. **ESCROW FOR CLOSING DOCUMENTS.** The sale and purchase contemplated hereunder shall be closed through an escrow with Title Insurer, in accordance with the general provisions of the usual form of deed and money escrow agreement then in use by Title Insurer, with

such special provisions inserted in the Escrow Agreement as may be required to conform with this Agreement. Upon the creation of such an escrow, anything herein to the contrary notwithstanding, payment of the purchase price and delivery of deed shall be made through the escrow on or prior to the Closing Date. Anything herein to the contrary notwithstanding, the terms of this Agreement shall supersede the terms of the escrow.

8. **CLOSING DOCUMENTS.**

   a. **Seller's Documents.** On the Closing Date, Seller shall deliver the following documents:

   i. Warranty Deed, conveying the Real Property to Purchaser.

   ii. Bill of Sale executed by Seller conveying the Personalty to Purchaser.

   iii. ALTA Statement.

   iv. Certificate of Non-Foreign Status required by Section 1445 of the Internal Revenue Code executed by Seller.

   v. Personal GAP undertaking of Seller, if required by Title Insurer.

   vi. Form 1099 solicitation exemption.

   vii. Certified copy of Member and/or Manager resolution of Seller authorizing Seller to enter into and consummate the transactions contemplated hereunder.

   viii. All keys to the Real Property and the Tangible Personal Property.

   ix. Such other documents as the Title Insurer may reasonably require in order to effectuate, or further evidence the intent of any provision in this Agreement.

   x. Current survey for the Property.

   xi. City of Chicago Water Certification and Zoning Certification.

   xii. Court approval and order approving the sale to G7 Investments, LLC.

   b. **Purchaser's Documents.** On the Closing Date, Purchaser shall deliver the following documents:

   i. Wire transfer of funds in an amount sufficient to meet Purchaser's obligations hereunder.

   ii. ALTA statement.

   iii. Personal (GAP) undertaking, if required by Title Insurer.

    iv. Certified copy of Member and/or Manager resolution of Purchaser authorizing Purchaser to enter into and consummate the transactions contemplated hereunder.

    v. Such other documents as the Title Insurer, Seller or its attorneys may reasonably require in order to effectuate or further evidence the intent of any provision in this Agreement.

  All of the documents and instruments to be delivered by Purchaser hereunder shall be in form and substance reasonably satisfactory to counsel for Seller.

  c. **Joint Documents.** On the Closing Date, Purchaser and Seller shall jointly execute the following documents:

    i. State, County and City Real Estate Transfer Tax Declarations or the EZ Dec forms in lieu thereof.

    ii. Closing Statements.

    iii. Escrow Instructions.

9. **POSSESSION AND "AS" "IS" CONDITION**

Seller agrees to deliver possession of the Property to Purchaser at Closing subject to existing leases. Property and all improvements thereon, mechanical systems or otherwise, are to be conveyed in "AS IS" condition and Purchaser accepts same in "AS IS" condition.

10. **PRORATIONS, ADJUSTMENTS AND CLOSING COSTS.**

  The following prorations shall be made between Seller and Purchaser as of the close of business on the day immediately preceding the Closing Date: real estate tax prorations at 100%. Purchaser shall pay those closing costs, including any transfer taxes, associated with this transaction, which are traditionally Purchaser's responsibility. At the closing Seller pay those closing costs traditionally the responsibility of Seller.

11. **DEFAULT AND REMEDIES.**

  a. **Default by Purchaser.** If Purchaser should fail to consummate the transaction contemplated herein for any reason, and if such default is not cured within five (5) days after notice thereof to Purchaser, Seller may elect the following remedy:

    i. Seller may initiate an action for specific performance and the Earnest Money plus interest thereon shall be delivered to Seller and Purchaser shall forfeit same.

12. **CONDEMNATION**. Upon receipt of any written offer, notice or communication from any governmental or quasi-governmental body seeking to take under its power of eminent domain all or

any part of the Project, Seller shall forthwith notify Purchaser of receipt of same and shall send to Purchaser such offer, notice or communication or a copy thereof.

 a. If all or substantially all of the Project is proposed to be so taken, this Agreement shall terminate and be null and void and of no further force or effect, in which event the Earnest Money and the Earnest Money Interest shall be returned to Purchaser and neither party shall have any further rights or obligations hereunder.

 b. If less than substantially all of the Project is proposed to be so taken, then within thirty (30) days after receipt by Purchaser of said notice of such proposed condemnation or taking under the power of eminent domain, Purchaser shall notify Seller in writing as to whether or not it desires to proceed under the terms of this Agreement.

  i. In the event that Purchaser notifies Seller that Purchaser does not desire to proceed because of such proposed condemnation or taking under the power of eminent domain, then the provisions of Subsection (a) above shall apply.

  ii. In the event that Purchaser notifies Seller that Purchaser desires to proceed with this Agreement or in the event that Purchaser fails to notify Seller of its election within said thirty (30) day period, then at the Closing either:

   (a) In the event that such condemnation or sale in lieu of condemnation has been concluded prior to the Closing, (1) the net proceeds of such partial condemnation or sale in lieu of condemnation (i.e., the entire award made in favor of Seller for the portion of the Project so taken or sold, less Sellers costs in obtaining said award, including but not limited to legal fees, appraisers' charges and surveying costs) shall be retained by Seller and the Purchase Price shall be reduced by the amount of said net proceeds and (2) the portion of the Project so taken or sold shall not be subject to this Agreement, or

   (b) In the event that such condemnation or sale in lieu of condemnation has not been concluded prior to the Closing, (1) Seller shall, at the Closing, assign to Purchaser all of Sellers rights to the condemnation proceeds and (2) the portion of the Project subject to condemnation or sale in lieu of condemnation or sale in lieu thereof shall be conveyed to Purchaser at the Closing.

If Purchaser elects to proceed with the Closing, Seller shall not compromise, settle or adjust any claims for condemnation awards without Purchasers prior written consent, which consent shall not be unreasonably withheld, delayed or objected to.

13. **NOTICES.**

All notices required or desired to be given under this Agreement shall be in writing and delivered personally or overnight carrier or sent by email or by registered or certified mail, postage prepaid, return receipt requested, addressed as follows:

    IF TO PURCHASER:    Nicholas M. Duric
        444 N. Northwest Highway
        Suite 207
        Park Ridge, IL 60068
        Email: Duriclaw@att.net

    IF TO SELLER:    Ariel Weissberg
        401 S. LaSalle Street
        Suite 403
        Chicago, IL 60605
        Email: ariel@weissberglaw.com

or to such other address as either party may from time to time designate by written notice given to the other party. Any notice given in accordance with the foregoing shall be deemed to have been given on the date upon which it shall have been delivered or two (2) days after being deposited in the United States mail, whichever is first.

14. **MISCELLANEOUS.**

    a.    The date of execution of this Agreement by the last party to execute the same shall be the effective date (the "Effective Date"). This Agreement may be executed in counterparts and all so executed shall constitute one and the same Agreement. The parties intend to sign and deliver this Agreement by facsimile or other electronic transmission. Each party agrees that the delivery of the Agreement by facsimile or other electronic transmission shall have the same force and effect as delivery of original signatures and that each party may use such facsimile or other electronic signatures as evidence of the execution and delivery of the Agreement by all parties to the same extent that an original signature could be used.

    b.    This Agreement shall be binding upon and shall inure to the benefit of the parties hereto, and their respective heirs, personal representatives, successors and assigns.

    c.    Wherever under the terms and provisions of this Agreement the time for performance falls upon a Saturday, Sunday, or Legal Holiday, such time for performance shall be extended to the next business day.

  d. The terms, provisions, and covenants (to the extent applicable) and indemnities shall survive the closing and delivery of the deed, and this Agreement shall not be merged therein, but shall remain binding upon and for the parties hereto subject to the provisions of Section 6(c) hereof until fully observed, kept or performed.

  e. This Agreement embodies the entire contract between the parties hereto with respect to the subject matter hereof. No extension, change, modification or amendment to or of this Agreement of any kind whatsoever shall be made or claimed by Seller or Purchaser, and no notice of any extension, change, modification or amendment made or claimed by Seller or Purchaser shall have any force or effect whatsoever unless the same shall be endorsed in writing and be signed by the party against which the enforcement of such extension, change, modification or amendment is sought, and then only to the extent set forth in such instrument.

  f. The captions at the beginning of the several paragraphs, respectively, are for convenience in locating the context, but are not part of the text.

  g. In the event any term or provisions of this Agreement shall be held illegal, invalid or unenforceable or inoperative as a matter of law, the remaining terms and provisions of this Agreement shall not be affected thereby, but each such term and provision shall be valid and shall remain in full force and effect.

  h. This Agreement shall be governed by the laws of the State of Illinois.

  i. By virtue of this Agreement, Seller does not, in any way or for any purpose, become a partner of Purchaser in the conduct of its business, or otherwise, or become a joint venturer or a member of a joint enterprise with Purchaser.

  IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the date hereinafter indicated.

| *PURCHASER:* | *SELLER:* |
|---|---|
| By: _[signature]_ | By: _____ |
| Name: Flavius Schinju | Name: _____ |
| Date: February 3, 2017 | Date: February ___, 2017 |

## SCHEDULE OF EXHIBITS

Exhibit A --  Legal Description
Exhibit B --  Personalty
Exhibit C --  Intangible Property

# EXHIBIT A

## LEGAL DESCRIPTION

(TO BE INSERTED BY SELLER)

## EXHIBIT B

## PERSONALTY

All existing on Property.

## EXHIBIT C

## INTANGIBLE PROPERTY

None.