UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| 925 N. Damen, LLC, | ) | Case No. 16-35387 |
| | ) | |
| Debtor. | ) | Hon. Donald R. Cassling |
| | ) | |
| | ) | |
| | ) | |

ORDER AUTHORIZING (1) REAL ESTATE PURCHASE AND SALE AGREEMENT
(2) SALE OF THE DEBTOR'S INTEREST IN PROPERTY FREE AND
CLEAR OF LIENS, CLAIMS AND INTERESTS, AND (3) RELATED RELIEF

Upon final consideration of the motion [ECF No. 8] (the "Sale Motion")[1] of 925 N. Damen,

LLC (the "Debtor") for the entry of an order (i) authorizing the sale (the "Sale") of the interests of

the Debtor and Chicago Title Land Trust number 8002371267 under trust agreement dated May

9, 2016, in certain real and personal property located at 925 N. Damen Street, Chicago, Illinois

(the "Property"), free and clear of liens, claims and interests; and (ii) related relief; the Court

having entered an order on November 30, 2016 (the "Bidding Procedures Order") approving

proposed bidding procedures (the "Bidding Procedures") and the Debtor's requests for related

preliminary relief on the Motion; an auction of the Property (the "Auction") having been held on

January 30, 2017 in accordance with the Bidding Procedures; the Debtor having executed a certain

Purchase and Sale Agreement (the "Agreement") with Development Group, LLC (the

"Purchaser") in accordance with the Bidding Procedures; the Purchaser having been determined

by the Debtor to have submitted the highest or otherwise best bid at the Auction for the Property;

a final hearing on the Sale Motion having been held on February 21, 2017 (the "Final Sale

---

[1] Capitalized terms not otherwise defined carry the same meanings ascribed to such terms
in the Sale Motion.

Hearing"); all interested parties having been afforded an opportunity to be heard with respect to

the Sale Motion; the Court having reviewed and considered (i) the Sale Motion, (ii) the objections

thereto, including (A) the *Objection Of G7 Investments, LLC And Flavius Schiopu To The Sale Of*

*925 N. Damen, Chicago, IL* [ECF No.41] and (B) the *Objection Of The Singer Weissbluth Parties*

*To The Motion For Order Authorizing The Sale Of The Debtor's Interest In Real Property* [ECF

No. 42], and (iii) the arguments of counsel made, and the evidence proffered or adduced, at the

Final Sale Hearing and the Court's preliminary hearings on the Sale Motion (collectively, the

"Preliminary Sale Hearings"); it appearing that the relief requested in the Sale Motion and

authorization of the sale of the Property identified in the Agreement is in the best interests of the

Debtor, its estate, creditors, and other parties in interest; and based on the Motion, the statements

of counsel, the record of the Preliminary Sale Hearings, the Final Sale Hearing and the Auction

and the record in this case, the Court having determined and concluded as follows:[2]

      A.    On November 4, 2016 ("Petition Date"), the Debtor filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code. Since then, the Debtor has remained

in possession of its assets and has continued to operate its business as a debtor in possession in

accordance with 11 U.S.C. §§ 1107 and 1108. The Debtor has all of the rights and powers of a

trustee in bankruptcy pursuant to 11 U.S.C. § 1107(a).

      B.    As a debtor in possession, the Debtor continues to manage the affairs of its

estate and exercise all of the rights and powers of a trustee serving in a case under chapter 11 of

the Bankruptcy Code in accordance with 11 U.S.C. § 1107. Among those rights and powers are

(i) the right and power to sell property of the Debtor's estate out of the ordinary course of business,

---

[2] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be
construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

free and clear of liens and interests, subject to approval by this Court after appropriate notice and

an opportunity for a hearing. *See* 11 U.S.C. §§ 363(b)and 363(f).

C.    This Court has core subject matter jurisdiction to hear and resolve the Sale

Motion pursuant to 28 U.S.C. §§ 1334(b), 1334(e), 157(b)(2)(A), 157(b)(2)(M), 157(b)(2)(N),

157(b)(2)(O) and applicable local rules regarding the referral to this court of cases under title 11

of the United States Code.

D.    The Property is property of the Debtor's estate. *See* 28 U.S.C. § 1334(e);

11 U.S.C. § 541(a).

E.    As evidenced by the certificates of service previously filed with the Court,

and based on the representations of counsel at the Preliminary Sale Hearings and the Final Sale

Hearing (collectively, the "Sale Hearings"), (i) proper, timely, adequate and sufficient notice of

the Sale Motion, the Auction, the Final Sale Hearing has been provided or otherwise excused in

accordance with 11 U.S.C. §§ 102(1), 105(a) and 363 and Fed. R. Bankr. P. 2002, 6004, 9006,

9007 and 9014; (ii) such notice was reasonable, sufficient, and appropriate under the

circumstances; and (iii) no other or further notice of the Sale Motion, the Auction, the Final Sale

Hearing is or shall be required.

F.    A reasonable opportunity to object or be heard with respect to the Sale

Motion has been afforded to all interested persons and entities, including: (i)) counsel to the United

States Trustee; (ii) all entities reasonably known by the Debtor to have an interest in the Property;

(iii) the creditors identified on the Debtor's matrix list of creditors filed in this case; (v) all parties

that have made a written appearance in the Debtor's case.

G.    As demonstrated by (i) the evidence proffered or adduced at the Sale

Hearings and (ii) the representations of counsel made on the record at the Sale Hearings, the Debtor

3

has adequately marketed the Property and conducted the Sale process in substantial compliance with the Bidding Procedures Order.

H.    The Debtor (i) has full power and authority to execute the Agreement and all other documents contemplated thereby, (ii) has all of the power and authority necessary to consummate the transactions contemplated by the Agreement, (iii) has taken all action necessary to authorize and approve the Agreement and the consummation by such Debtor and Chicago Title Land Trust number 8002371267 under trust agreement dated May 9, 2016, of the transactions contemplated thereby.

I.    The Debtor has demonstrated sound business justifications for the Sale of the Property pursuant to 11 U.S.C. § 363(b).

J.    The Agreement was negotiated, proposed and entered into by the Debtor and the Purchaser without collusion, in good faith, and from arm's-length bargaining positions. Neither the Debtor nor the Purchaser has engaged in any conduct that would cause or permit the Agreement to be avoided under 11 U.S.C. § 363(n). The Purchaser is a good faith purchaser under 11 U.S.C. § 363(m) and, as such, is entitled to all of the protections afforded thereby.

K.    The consideration provided by the Purchaser for the Property pursuant to the Agreement (i) is fair and reasonable, (ii) is the highest and best offer for the Property at the Auction, and (iii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

L.    The transfer of the Property to the Purchaser will be a legal, valid, and effective transfer of the Property, and will vest the Purchaser with all right, title and interest of the Debtor and Chicago Title Land Trust number 8002371267 under trust agreement dated May 9, 2016, in the Property, free and clear of all liens, claims and interests whatsoever (collectively,

4

"Interests"), except for the "permitted exceptions" set forth in Exhibit 1 appended hereto ("Permitted Exceptions").

M.     The Purchaser would not have entered into the Agreement and will not consummate the transactions contemplated thereby, thus adversely affecting the Debtor, its estate, and its creditors, if the Sale of the Property to the Purchaser were not free and clear of all Interests of any kind or nature whatsoever, or if the Purchaser would, or in the future could, be liable for any of the Interests.

N.     The Debtor and Chicago Title Land Trust number 8002371267 under trust agreement dated May 9, 2016, may sell the Property free and clear of all Interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in 11 U.S.C. § 363(f) has been satisfied. Those holders of Interests who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented pursuant to 11 U.S.C. § 363(f)(2). Those holders of Interests who did object fall within one or more of the other subsections of 11 U.S.C. § 363(f) and are adequately protected by having their Interests, if any, attach to the net proceeds of the Sale ultimately attributable to the property against or in which they claim or may claim an Interest.

O.     Authorization of the Agreement and consummation of the Sale at this time are in the best interests of the Debtor, its creditors, its estate and other parties in interest.

**NOW THEREFORE, BASED UPON THE FOREGOING FINDINGS OF FACT, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT**:

1.     The Sale Motion is granted as further described herein.

2.     All objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits.

3.      Pursuant to 11 U.S.C. § 363(b), the Debtor and Chicago Title Land Trust number 8002371267 under trust agreement dated May 9, 2016, are authorized to consummate the Sale pursuant to and in accordance with the terms and conditions of the Agreement in the form attached hereto as <u>Exhibit 2</u>.

4.      The Debtor and Chicago Title Land Trust number 8002371267 under trust agreement dated May 9, 2016, are authorized to execute and deliver, and are empowered to perform under, consummate, and implement, the Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Agreement, and to take all further actions as may be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser or reducing to possession, the Property, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Agreement.

5.      Except as expressly permitted or otherwise specifically provided for in the Agreement or this Sale Order, pursuant to 11 U.S.C. §§ 105(a) and 363(f), the Property shall be transferred to the Purchaser, and as of the date ("<u>Closing Date</u>") of the closing of the transactions contemplated in the Agreement ("<u>Closing</u>"), shall be free and clear of all Interests of any kind or nature whatsoever, but subject to the Permitted Exceptions, with all such Interests of any kind or nature whatsoever to attach to the net proceeds of the Sale in the order of their priority, with the same validity, force and effect which they now have as against the Property, subject to any claims and defenses the Debtor may possess with respect thereto.

6.      Except as expressly permitted or otherwise specifically provided for in the Agreement or this Sale Order, all persons and entities, including, but not limited to, all debt holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade and other creditors holding Interests of any kind or nature whatsoever against or in the Debtor or the

6

Property (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent; liquidated or unliquidated, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtor, the Property, the operation of the Debtor's business prior to the Closing Date, or the transfer of the Property to the Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting against the Purchaser, its successors or assigns, its property, or the Property, such persons' or entities' Interests.

      7.    The transfer of the Property to the Purchaser pursuant to the Agreement shall constitute a legal, valid and effective transfer of the Property, and shall vest the Purchaser with all right, title and interest of the Debtor and Chicago Title Land Trust number 8002371267 under trust agreement dated May 9, 2016, in and to the Property free and clear of all Interests of any kind or nature whatsoever, other than the Assumed Liabilities and the Permitted Exceptions.

      8.    On the Closing Date of the Sale, each of the Debtor's creditors is authorized to execute such documents and take all other actions as may be necessary to release its Interests in the Property, if any, as such Interests may have been recorded or may otherwise exist.

      9.    If any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing Interests in the Debtor or the Property shall not have delivered to the Debtor prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Interests which the person or entity has with respect to the Debtor or the Property or otherwise, then (a) the Debtor is hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Property, and (b) the Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Interests in the Property of any kind or nature whatsoever.

10.    The consideration provided by the Purchaser for the Property under the Agreement shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.

11.    This Sale Order (a) shall be effective as a determination that, on the Closing Date, all Interests of any kind or nature whatsoever existing as to the Debtor, Chicago Title Land Trust number 8002371267 under trust agreement dated May 9, 2016, or the Property prior to the Closing have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all entities, including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Property.

12.    Each and every federal, state and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

13.    Except as expressly permitted or otherwise specifically provided for in the Agreement or this Sale Order, the Purchaser shall have no liability or responsibility for any liability or other obligation of the Debtor arising under or related to the Property.

14.    This Court retains jurisdiction to enforce and implement the terms and provisions of the Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith in all respects, including, but not limited

8

to, retaining jurisdiction to (a) compel delivery of possession of the Property to the Purchaser, (b) compel delivery of the purchase price or performance of other obligations owed to the Debtor, (c) resolve any disputes arising under or related to the Agreement, except as otherwise provided therein, and (d) interpret, implement, and enforce the provisions of this Sale Order.

15.    The transactions contemplated by the Agreement are undertaken by the Purchaser in good faith, as that term is used in 11 U.S.C. § 363(m), and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale to the Purchaser, unless such authorization is duly stayed pending such appeal prior to the Closing. The Purchaser is a purchaser in good faith of the Property, and the Purchaser is entitled to all of the protections afforded by 11 U.S.C. § 363(m).

16.    The terms and provisions of the Agreement and this Sale Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtor, its estate, and its creditors, the Purchaser, and its respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting Interests in the Property to be sold to the Purchaser pursuant to the Agreement, notwithstanding any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding.

17.    The failure specifically to include any particular provisions of the Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety.

18.    The Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of the Court, provided that

9

any such modification, amendment or supplement does not have a material adverse effect on the

Debtor's estates.

       19.    As provided by Fed. R. Bankr. P. 6004(h), this Sale Order shall <u>not</u> be

stayed for 14 days after the entry of the Sale Order and shall be effective and enforceable

immediately upon entry.

                      ENTER:

Date:  **FEB 2 7 2017**

                      _____
                      Donald R. Cassling
                      United States Bankruptcy Judge

**EXHIBIT**
**PERMITTED EXCEPTIONS FOR SALE OF 925 N. DAMEN, CHICAGO, ILLINOIS**

General Exceptions:

2.      Unrecorded easements, discrepancies or conflicts in boundary lines, shortage in area and encroachments which an accurate and complete survey would disclose.

Standard Exceptions:

B.      The Policy to be issued contains an arbitration clause. Any matter in dispute between you and the Company may be subject to arbitration as an alternative to court action. Upon request, the Company will provide a copy of this clause and the accompanying arbitration rules prior to the closing of the transaction. Any decision reached by arbitration shall be binding upon both you and the Company. The arbitration award may include attorney's fees, if allowed by state law, and may be entered as a judgement in any court of proper jurisdiction.

3.      The property in question is encumbered by a Special Services Area assessment tax pursuant to the Illinois Compiled Statutes Chapter 35 Sections 200/27-5 through 200/27-85. The amount of said assessment is included in the yearly real estate tax bill. Please contact the county clerk's office for particulars.

        Government entity creating said assessment lien: City of Chicago Special Service Area 33

        Ordinance recorded as Document Number: 0535635138

14.     The premises in question is located in the City of Chicago and may therefore be subject to the City of Chicago transfer tax.

        A Water Department Certification of Non-exempt Transactions must be ordered 10 working days prior to closing and the Water Department must complete the Registration portion of the Chicago Transfer Declaration including the receipt for all fees paid.

        A Building Registration Certification on buildings containing 4 or more family units or sleeping accommodations for 10 or more persons must be obtained from City Hall and a copy of same should be attached to the Chicago Transfer Declaration form.

        We must be provided with proof that the transfer tax has been paid or we are to be given funds with which to pay the transfer tax on non-exempt transactions.

        On exempt transactions, we require the Chicago Transfer Declaration form be prepared and that the exemption information be inserted.

Failure to comply with the above may result in a possible lien in favor of the City of Chicago by reason of the Chicago Real Property Transfer Tax Ordinance.

15. Note: The land lies within a county which is subject to the Predatory Lending Database Act (765 ILCS 77/70 et seq. as amended). A certificate of compliance with the Act or a certificate of exemption therefrom must be obtained at time of closing in order for the company to record any insured mortgage. If the closing is not conducted by the company, a certificate of compliance or certificate of exemption must be attached to any mortgage to be recorded.

   Note: For Kane, Will and Peoria counties, the Act applies to mortgages recorded on or after July 1, 2010.

16. Effective December 1, 1997, a Certificate of Zoning Compliance (or evidence of waiver thereof) from the City of Chicago Zoning Administrator will be required before City of Chicago transfer tax stamps may be issued on residential property zoned for, or occupied by, one or more: (a) one- family dwellings,(b) two-family dwellings, or (c) multi-family dwellings containing five or fewer dwelling units.

   A Zoning Certificate or Waiver, however, is not required for the following types of residential property: (a) condominium units, (b) cooperative apartments, (c) newly constructed dwellings sold to the initial occupant of a dwelling, or (d) multi-family properties containing six or more dwelling units.

   In order to minimize any potential delays at closing, the required $120.00 administrative fee and a Zoning Compliance Application Form should be presented to the City of Chicago Zoning Administrator as soon as possible. Applications for the Certificate are available at 121 N. LaSalle Street, 9th floor. For further information, please contact the Zoning Department at 312-744-5777.

   This exception is for informational purposes only and will not appear on the final policy when issued.

17. Effective June 1, 2009, if any document of conveyance for Cook County residential real property is to be notarized by an employee of North American Title Company who is an Illinois notary public, Public Act 95-988 requires the completion of a notarial record for each grantor whose signature is notarized. The notarial record will include the thumbprint or fingerprint of the grantor. The grantor must present identification documents that are valid; are issued by a state or federal government agency; bear the photographic image of the individual's face; and bear the individual's signature.

18. Effective June 1, 2009, pursuant to Public Act 95-988, satisfactory evidence of identification must be presented for the notarization of any and all documents notarized by an Illinois Notary Public. Satisfactory identification documents are

documents that are valid at the time of the Notarial Act; are issued by a state or federal government agency; bear the photographic image of the individual's face; and bear the individual's signature.

19.    Requirement for coverage of Owner's and Loan Policies:

A)    A survey, if available, should be produced for examination and a copy for our files. If a survey is not available, a statement by the proposed insured to this effect should be furnished. If survey is more than 6 months old, an Affidavit of No New Improvements should be furnished.

B)    An "ALTA Loan and Owner's Policy Statement" executed by all parties holding title to the land during the six (6) months preceding the date of the policy. If land vested in a land trust, the Trustee as well as the beneficiaries should execute said statement.

C)    Satisfactory evidence of the payment in full of the cost of furnishing services, labor and materials in connection with any improvements made on the land within six months of the date of Policy. This evidence should consist of sworn Contractor's and Subcontractor's affidavits together with all necessary waivers of lien.

## PURCHASE and SALE AGREEMENT

**THIS PURCHASE AND SALE AGREEMENT** (this "Agreement") is entered into this _____ day of _____, 201__ (the "Effective Date"), by and between Chicago Title Land Trust number 8002371267 under trust agreement dated May 9, 2016 ("Seller"), and _____, *Development Group, LLC* company, the address of which is *925 N. Damen Avenue, Chicago, IL 60622* ("Buyer") (Seller and Buyer are each individually a "Party" and collectively the "Parties"). -

### RECITALS:

A.     Seller is the owner of certain real property commonly known as 925 N. Damen Street, Chicago, Illinois, together with all improvements thereon and all appurtenances pertaining thereto, including, but not limited to, all right, title and interest of Seller in and to adjacent streets, alleys, easements and rights-of-way (collectively the "Property"), which Property is legally described on **Exhibit A**, attached hereto and made a part hereof.

B.     Buyer desires to purchase and Seller desires to sell the Property in a single bulk purchase, in accordance with, and subject to the terms and conditions hereof.

D.     "Effective Date" shall mean the date that Buyer and Seller execute this Agreement.

**NOW THEREFORE,** in consideration of the mutual covenants and the undertakings described in this Agreement, and other good and valuable consideration, the receipt and adequacy thereof being expressly acknowledged, the Parties agree as follows:

1.     **Purchase and Sale.**  Seller shall sell to Buyer and Buyer shall purchase from Seller the Property.  The Buyer shall purchase the Property in a single bulk purchase at closing.  Closing of the purchase and sale ("Closing") shall be scheduled on the mutual agreement of the Parties, provided that the Closing shall occur on or before forty-five (45) days following the expiration of the Due Diligence Period (hereafter defined).

2.     **Earnest Money Deposit.** In consideration of the right to purchase the Property granted herein by Seller to Purchaser, Purchaser shall, on or prior to the fifth (5th)business day following the Effective Date and the date the Parties agree on escrow instructions, Buyer shall make a cash deposit of *Sixty Thousand* Dollars ($ *60,000*.00) ("Deposit") to North American Title and Trust Company, Chicago, Illinois ("Title Insurer"), and the Deposit shall be held in a strict joint signature escrow by the Title Insurer.  Upon expiration of the Due Diligence Period (hereinafter defined), Buyer shall deposit an additional _____ *0* _____ Dollars ($_____ *0* ____) of additional earnest money.  All Deposits shall become non-refundable at the end of the Due Diligence Period, subject to and conditioned upon  the Seller's performance of the terms of this Agreement.  If Buyer does not

1

timely deposit the additional $_____○_____ of earnest money: (a) Seller may terminate this Agreement; and, (b) the initial earnest money deposit of $ 60,000.00 shall be immediately released to Seller, but only if the Seller is not in default of the terms of this Agreement. The Deposit shall be applicable and applied to the Purchase Price at Closing.

3.    **Purchase Price; Payment Terms**.

A.    At Closing, Seller shall sell, and Buyer shall buy the Property for a price of *Five Hundred Eighty Thousand* Dollars ($ 580,000.00) ("Purchase Price"). The Purchase Price, subject to closing prorations pursuant to paragraph 8(A) of this agreement and credits, if any, shall be paid to Seller in cash by wire transfer of immediately available funds at Closing.

4.    **Title, Survey & Seller's Documents**.

A.    Within three (3) days of the Effective Date, Seller shall deliver to Buyer a commitment for an ALTA Owner's Title Insurance Policy covering the Property (the "Commitment"), issued by the Title Insurer in an amount of Ten Thousand Dollars ($10,000.00), which amount shall be increased to the amount of the Purchase Price at Closing, naming Buyer or its assignee as the proposed insured and identifying the condition of title to the Property, together with a legible copy of the instruments and documents ("Title Instruments") referenced in the Commitment and all beneficial easements which are appurtenant to the Property, but only to the extent that the Title Instruments were not previously produced to Buyer. The Commitment shall show Seller to be the owner of fee simple title to the Property.

B.    As of the Effective Date, Seller shall provide Buyer with full size copies of the ALTA survey (the "Survey") of the Property signed and dated as of _____, a copy of which is attached hereto as **Exhibit B**. Prior to expiration of the Due Diligence Period (hereafter defined), Seller shall cause the Survey to be certified to Purchaser and the Title Insurer at Buyer's cost payable at the Closing.

C.    Purchaser shall have five (5) days (the "Review Period") after receipt of the later of the Title Commitment, Survey and Title Instruments in which to examine same and notify Seller in writing of objection to same. Upon the expiration of the Review Period, Purchaser shall be deemed to have accepted all exceptions to title to the Property as shown on the Title Commitment and said exceptions shall be deemed "Permitted Encumbrances," except for matters for which notification permitted herein has been given by Purchaser. In the event of notification to Seller of objections by Purchaser, Seller shall in good faith undertake to eliminate or modify such objectionable items to the reasonable satisfaction of Purchaser within five (5) days (the "Cure Period") after receipt of such notice of objections, or the Seller may terminate this Agreement by written notice to the Buyer. In the event that Buyer timely objects to certain exceptions to title, and the Buyer and Seller reach a written agreement as to which of the exceptions to title are acceptable to both parties, these exceptions will then be the "Permitted Exceptions" for this transaction. In the event Seller has not cured, or is unable to cure, objections of Purchaser within the Cure Period, Purchaser may, at its option, and as Purchaser's sole remedy, terminate this Agreement by written notice to Seller on or before five (5) days subsequent to the Cure Period. In the event Purchaser elects not to terminate this Agreement,

Purchaser shall accept title as it then is and waive all objections to any other unpermitted exceptions which shall thereafter be deemed Permitted Encumbrances. If this Agreement is terminated, the Earnest Money shall be promptly returned to Purchaser. Seller shall pay all costs, fees, and expenses payable to the Title Company, and neither party shall thereafter have any further duties, rights or obligations hereunder. Possession shall be delivered at Closing free and clear of all matters except the Permitted Encumbrances.

5.  **Due Diligence Period.**

A.    For a period of Zero ( 0 ) days following the Effective Date (the "Due Diligence Period"), Buyer shall have the right of investigation and inspection of the Property to determine, in Buyer's sole and absolute discretion, whether or not the Property is acceptable to Buyer and suitable for Buyer's intended use thereof.

B.    As of the Effective Date, Buyer and its agents shall have the right to enter upon the Property or any other property encumbered with an easement running to the benefit of the Property. Buyer may, at its expense, conduct engineering, environmental and feasibility studies of the Property (including, without limitation, utilities, wetlands, drainage, geotechnical, soils, environmental, architectural, historical, marketing, engineering, and financial investigations, tests, and studies) to determine whether or not the Property is suitable to Buyer in Buyer's sole and absolute discretion. Following expiration of the Due Diligence Period, Buyer and Buyer's employees and agents may continue to access the Property for the purpose of conducting additional investigations and inspections. If the Agreement is terminated by either party, Buyer will repair at Buyer's sole cost any damage done to the Property caused by its inspections or studies on or before sixty (60) days after the termination of the Agreement, and a "hold back" equal to one and one-half times the cost of repairs will be held by the Title Insurer from the Earnest Money, subject to the prompt and complete repair of the damage. This "hold back" of a portion of the Earnest Money is not intended to be in lieu of the Buyer promptly repairing the damage or as liquidated damages.

C.    Buyer will not meet with any representative of the City of Chicago without a representative of the Seller present, unless the Seller agrees in writing not to attend the meeting.

D.    For a period of one (1) year following Closing or termination of this Agreement, as the case may be, Buyer shall indemnify, defend and hold harmless Seller from and against any loss, cost, including reasonable attorney's fees, liability or expense Seller may have resulting from Buyer's inspection or studies.

E.    Buyer may terminate this Agreement for any reason, in its sole and absolute discretion, by providing Seller with written notice of termination on or before the expiration of the Due Diligence Period, in which event the Deposit shall be released to Buyer, and the Parties shall have no further rights or obligations under this Agreement, with the exception of those obligations which expressly survive termination of this Agreement. If Buyer does not provide Seller with written notice of termination on or before the expiration of the Due Diligence Period, then the Deposit shall be non-refundable, subject to Seller default and the Closing Conditions, but shall remain applicable to the Purchase Price at Closing. In the event of termination of this

3

Agreement by either party, Buyer shall remain obligated under the terms of any non-disclosure or confidentiality agreement Buyer or its affiliated company executed relating to the Property.

F.    In the event of a termination of this Agreement for any reason other than a default by Seller, then Buyer shall within ten (10) days of the date of termination, at its sole cost and expense, but without any recourse, representation or warranty with respect to same, provide to Seller complete copies of all studies, surveys, reports, plans, applications and other materials prepared by third parties for, on behalf of or at the request of Purchaser (collectively "Buyer's Documents") in connection with its feasibility studies of the Property. The Buyer's Documents shall expressly exclude any reports or materials which are proprietary or confidential to Purchaser, including architectural drawings and elevations, marketing studies and financial feasibility studies. With respect to the Buyer's Documents, Seller acknowledges and agrees that: (i) Buyer makes no covenant, representation or warranty whatsoever as to such information, including, without limitation, its content, reliability, accuracy or completeness, (ii) if Seller uses or relies on any information provided by Buyer, Seller shall do so solely at Seller's own risk, and Buyer makes no representation, warranty or assurance as to whether Seller has any right to use or rely thereon, (iii) the parties preparing any such information are not the agents of Buyer, (iv) Buyer shall have no duty to advise Seller of any misrepresentations, misstatements, mistakes, errors or other inaccuracies contained in such information, and (v) Buyer shall have no liability, and is hereby released from all liability, to Seller, its successors and/or assigns, with respect to such information, including, without limitation any liability for misrepresentations, misstatements, mistakes, errors or other inaccuracies contained in such information. The terms of this paragraph 5E shall survive termination of this Agreement.

6.    **Conditions to Closing.**

A.  Without limiting any of the other conditions set forth in this Agreement, the obligations of Buyer under this Agreement are subject to the satisfaction of the following conditions as of each Closing Date (each a " Buyer Closing Condition"):

i.   All of the representations and warranties by Seller set forth in this Agreement shall be true and correct in all material respects when made and shall be true and correct in all material respects as of Closing. With respect to any representation made to Seller's knowledge, the condition to Closing shall be not only that such representation still be true to Seller's knowledge, but that the specific fact or condition that was the subject of the representation also be true.

ii.  Subject to any condition created by the Buyer or Buyer's agents, the Property shall be in substantially the same condition as of the Effective Date.

iii. Seller shall have performed, observed and complied in all material respects with all covenants and agreements required by this Agreement to be performed by Seller at or prior to Closing, including, without limitation, delivery of all of Seller's Closing documents.

iv.  The Title Insurer shall be prepared to issue a Title Policy, which insures title to the Property to be acquired at Closing, subject only to the Permitted Exceptions.

4

v.   There shall be no outstanding notices of violation with respect to the Property, except the Notices of violation issued by the City of Chicago existing on the Effective Date as reported on the website of the City of Chicago Building Department.

vi.   There shall be no leases or agreements with respect to the Property that would grant a third party access, use or possession of any portion of the Property.

v.   The Bankruptcy Court, as defined herein, shall enter the Order, as defined herein.

B.   Without limiting any of the other conditions set forth in this Agreement, the obligations of Seller under this Agreement are subject to the satisfaction of the following conditions as of each Closing Date (each a "Seller Closing Condition") collectively the "Closing Conditions"):

i.   All of the representations and warranties by Buyer set forth in this Agreement shall be true and correct in all material respects when made and shall be true and correct in all material respects as of Closing. With respect to any representation made to Buyer's knowledge, the condition to Closing shall be not only that such representation still be true to Buyer's knowledge, but that the specific fact or condition that was the subject of the representation also be true.

ii.   Buyer shall have performed, observed and complied in all material respects with all covenants and agreements required by this Agreement to be performed by Buyer at or prior to Closing, including, without limitation, delivery of all of Buyer's Closing documents.

The Buyer's Closing Conditions and the Seller's Closing Conditions shall be collectively the "Closing Conditions"):

B.   If, on or before Closing, any Closing Condition has not been satisfied, Seller or Buyer, as the case may be, shall use good faith diligent efforts to satisfy any such Closing Condition and, if so directed by the complaining party, the Closing may be extended by written agreement signed by both of the parties, and the noncompliant party shall thereafter use its good faith diligent efforts to satisfy such Closing Condition. If a Closing Condition cannot be satisfied following the aforementioned extension of the Closing Date, then: (i) the Buyer shall have rights as set forth in paragraph 15B of this Agreement, and (ii) the Seller shall have the right to terminate this Agreement with written notice to the Buyer.

7.   **Closing Deliveries.**   At Closing, the parties shall execute the following documents and take the following actions:

A.   **Seller's Closing Deliveries.**   At Closing, Seller shall execute and deliver the following to the Title Insurer to be held in escrow pending authorization to close from the attorneys for the respective parties.

i. Seller shall execute and deliver a general warranty deed ("Deed"), duly executed and acknowledged, conveying to Buyer good and indefeasible fee simple title to the Property, free and clear of all leases, liens, claims, and encumbrances except the Permitted Encumbrances. The Deed shall be accompanied by an Illinois real estate transfer tax valuation affidavit ("PTAX-203"), as the purchase price is not to be reflected on the Deed;

ii. Seller shall execute and deliver to the Title Insurer a closing statement showing the Purchase Price together with all prorations, adjustments and credits as required under this Agreement.

iii. Seller shall pay, escrow or credit Buyer for all taxes for the Property for the current year up to the date of Closing pursuant to paragraph 8A below;

iv. Seller shall deliver possession of the Property to Buyer free and clear of any possessory interest held by any other party, subject only to the Permitted Encumbrances;

v. Seller shall cause the Title Company to issue and advise Buyer that it has issued the Title Policy, or provide an irrevocable Commitment pursuant to which a Title Policy will be issued, in the amount of the Purchase Price, insuring fee simple, good and indefeasible title to the Property, subject only to the Permitted Encumbrances, with extended coverage. Any other endorsements requested by Purchaser shall be a Purchaser expense, except that any endorsements required to insure over any unpermitted title encumbrances shall be a Seller expense;

vi. Seller shall execute and deliver an ALTA Statement, GAP Undertaking and other documents as may be required by the Title Company associated with its issuance of the title policy;

vii. Seller shall execute and deliver a FIRPTA Statement;

viii. Seller shall execute and deliver a Bill of Sale conveying title to any personal property located on the Property as of the Closing;

ix. Seller shall execute and deliver a General Assignment in the form attached as **Exhibit C** hereto; and

x. Seller shall execute and deliver such additional documents and instruments and take such further actions as may be necessary or desirable to complete the purchase and sale of the Property in accordance with this Agreement.

B.    **Buyer's Closing Deliveries.**    At Closing, Buyer shall execute and deliver the following to the Title Insurer to be held in escrow pending authorization to close from the attorneys for the respective parties.

i.    Buyer shall deliver the cash funds necessary to fund the Purchase Price, less all prorations, adjustments and credits as required under this Agreement, plus the Buyer's closing expenses as set for in the Settlement Statement prepared by the Title Insurer;

ii.    Buyer shall deliver counterpart signatures for the ATLA Statement and GAP Undertaking, to the extent required by the Title Insurer;

iii.    Buyer shall deliver counterpart signatures on the PTAX-203 and other transfer tax documents requiring the Buyer's signature;

iv.    Buyer shall deliver counterpart signatures for Seller's 1031 exchange documentation, provided at no expense to Buyer and provided that Buyer's signature is reasonably necessary; and

v.    Buyer shall deliver counterpart signatures for such other additional documents and instruments and take such further actions as may be necessary or desirable to complete the purchase and sale of the Property in accordance with this Agreement.

8.    **Prorations and Adjustments.**

A.    **Tax Prorations**. Taxes, assessments and levies (collectively, "Taxes") assessed with respect to the Property in the year prior to the year in which Closing occurs but due and payable in the year in which Closing occurs shall be the responsibility of Seller, and Purchaser shall receive a credit against the Purchase Price for such unpaid Taxes at Closing. All Taxes assessed in the year in which Closing occurs but due and payable in the year following the year in which Closing occurs shall be prorated as of the date of Closing, and Purchaser shall receive a credit against the Purchase Price for such Taxes attributable to the period prior to and including the date of Closing. Notwithstanding the foregoing to the contrary, if the amount of any Taxes payable by Seller at Closing is not available at the time of Closing then (i) such Taxes shall be estimated and prorated based upon 105% of the amount of the last known tax bill for the Property, and (ii) Purchaser shall be obligated to pay all Taxes due and payable on and after the date of Closing. All real estate tax prorations at Closing are final.

B.    **Title Costs.** Seller shall pay all State and County transfer taxes and the costs associated with an owner's policy of title insurance with extended coverage. Buyer shall pay for recording of the Deed and mortgage, the costs of any title endorsements requested by Buyer and any other costs customarily payable by a buyer of commercial real property in Chicago, Illinois, except as otherwise provide herein. Any municipal transfer tax shall be paid by Buyer. Title company closing fees, including any escrow fee, shall be split evenly between the Parties.

C.    **Transfer Taxes.** Seller shall be responsible for the payment of all State and County transfer taxes due and payable on sale of the Property. Municipal transfer tax shall be paid by the Buyer. Seller shall be responsible for all certifications or inspections required by a governmental entity as a condition to Closing.

9.    **Insurance**. At all times during the term of this Agreement, to insure against liability of Buyer and its consultants, and each of its agents, employees or contractors, arising out of the inspections or testing, Buyer shall maintain in effect public liability and property damage insurance with respect to the subject matter of this Agreement which insures against claims for bodily injury, personal injury and property damage, with limits for bodily injury not less than Two Million Dollars ($2,000,000.00) per occurrence and property damage limits of not less than Two Million Dollars ($2,000,000.00). Within ten (10) days of the Effective Date, Buyer shall

provide Seller with a certificate of insurance, which evidences the foregoing insurance coverage
and which identifies Seller as an additional insured on said policy.

10.    **Seller's Covenants Prior to Closing**. Seller shall have the following obligations
with respect to the Property upon the Effective Date, which obligations shall survive the
termination of this Agreement:

A.    **Maintenance**. Seller shall maintain that portion of the Property owned by Seller
in substantially the same "as is" condition as existing on the Effective Date. .

B.    **Possession.**    Seller shall not grant a right of possession to a third party over any
portion of the Property without the written consent of Buyer.

C.    **Seller Cooperation**. At no cost to Seller, Seller shall reasonably cooperate with
Buyer's efforts to secure any and all necessary governmental approvals with respect to the
development of the Property. After Closing, the failure of Buyer or its nominee to obtain
necessary governmental approvals shall not be an event of default or breach of this Agreement.
In addition, Seller is making no representations or warranties as to Buyer or its nominee's ability
to obtain necessary governmental approvals relating to the Property.

11.    **Seller's Representations, Warranties and Covenants.**

A.    Seller represents, warrants and covenants to Buyer the following:

i.    **Power and Capacity.**    Subject to and conditioned upon the entry of an Order
("Order") by the United States Bankruptcy Court for the Northern District of Illinois,
Eastern Division ("Bankruptcy Court"), in the bankruptcy case *In re 925 N. Damen,
LLC*, case number 16-35387 ("Bankruptcy Case"), Seller has the full power, capacity
and legal right to execute and deliver this Agreement and sell the Property to Buyer
pursuant to the terms of this Agreement. Subject to and conditioned upon the entry of
the Order, the execution, delivery and performance of this Agreement and the
obligations undertaken by Seller under this Agreement, have been duly authorized by
all necessary action, and subject to and conditioned upon the entry of the Order, this
Agreement has been executed by a duly authorized representative of Seller and
constitutes a valid and binding obligation of Seller, enforceable in accordance with its
terms. At all times during the term of this Agreement, Seller shall not transfer any
portion of the Property or grant or permit any easements, non-mortgage liens,
mortgage encumbrances or other interests with respect to the Property, without
Buyer's prior written consent.

ii.    **Foreign Person.** Seller is not a "Foreign Person" within the meaning of the Internal
Revenue Code of 1986, Section 1445(f)(3), as amended.

iii.    **Contractual Obligations.** The execution and delivery of this Agreement, and the
performance by Seller of any and all transactions contemplated by this Agreement,
will not breach any contractual covenant or restriction between Seller and any third
party affecting the Property.

iv.   **Litigation**. Other than the bankruptcy case of *In re 925 N. Damen, LLC*, case number 16-35387 pending in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, there is no pending or threatened litigation, administrative action or examination, claim or demand relating to the Property, or any pending or threatened exercise of the power of eminent domain, condemnation proceeding or other governmental taking with respect to all or any part of the Property. No notice of default under laws, ordinances, rules and regulations of any governmental authority having jurisdiction over the Property has been issued or threatened.

v.   **Condemnation Proceedings; Special Assessments.** Seller has not received written notice of any condemnation or eminent domain proceeding regarding any of the Property, and has not entered into any negotiations for the disposition of any of the Property in lieu of the commencement of condemnation or eminent domain proceedings, and to the best of Seller's knowledge, there are no proceedings pending before any governmental agency to impose a special assessment or other public authority charge against all or any of the Property.

vi.   **Debts**. With the exception of the liabilities or debts referenced on the Commitment which will be waived as of the Closing Date, there are no unpaid charges, debts, liabilities, claims, or obligations arising from the construction, occupancy, ownership, use or operation of the Property.

vii.   **Environmental Condition**. Anything in this Agreement to the contrary notwithstanding, it is expressly understood and agreed that Buyer does not assume or agree to be responsible for, and Seller hereby agrees to defend, indemnify and hold Buyer harmless from and against, any and all claims, obligations and liabilities and all costs, expenses and attorneys' fees incurred, based upon or arising out of any obligation, liability, loss, damage or expense, of whatever kind or nature, contingent or otherwise, known or unknown, incurred under, or imposed by, any environmental laws arising out of any act or omission by Seller or its employees or representatives prior to the Closing.

viii.   **Possession**. There are no unrecorded agreements, undertakings or restrictions which affect the Property. There are no tenants, persons or entities occupying any portion of the Property, and no claim exists against any portion of the Property by reason of adverse possession or prescription.

ix.   **Seller Documents**. Seller has, as of the Effective Date, delivered to Buyer copies of all documents relating to the Property that are set forth in Exhibit 11(A) (ix) ("Seller Documents").

B.   If, prior to the Closing Date, Seller obtains knowledge of a fact or circumstance the existence of which would constitute a breach by Seller of its representations and warranties hereunder or would render any such representations and warranties untrue or incorrect, Seller shall promptly notify Buyer in writing of the same. Under said circumstances, and in addition to

any other right or remedy that may be available to Buyer, Buyer, at its option, may terminate this Agreement without further liability by giving written notice thereof to Seller, in which event Buyer may exercise those remedies set forth in paragraph 15B of this Agreement. Seller agrees to defend, indemnify and hold harmless Buyer from and against any loss, claim, damage or expense, including reasonable attorneys' fees that Buyer may sustain because of the breach of any of Seller's representations and warranties, whether such breach is discovered before or after the Closing Date.

12.    **Buyer's Representations, Warranties and Covenants**. Buyer represents, warrants and covenants to Seller as follows:

A.    **Due Organization.** Buyer is a limited liability company or corporation duly organized and in good standing under the laws of the State of Illinois and has the power and authority to purchase the Property.

B.    **Power and Capacity.** Buyer has the full power, capacity, authority and legal right to execute and deliver this Agreement and to perform its obligations under this Agreement.

C.    **Due Authorization.** This Agreement has been duly authorized, executed and delivered by Buyer and constitutes the legal, valid and binding obligation of Buyer, enforceable in accordance with its terms. Prior to Closing, any and all documents required by this Agreement to be executed and delivered by Buyer shall have been duly authorized, executed and delivered by Buyer, and all such documents shall contain legal, valid and binding obligations of Buyer, enforceable in accordance with their terms.

D.    **Condition of Property.** Buyer acknowledges and agrees that, except as otherwise specifically set forth in this Agreement, neither Seller nor any agent, employee, attorney, or representative of Seller has made any statements, agreements, promises, assurances, representations, or warranties, whether express, implied, or otherwise, regarding the condition of the Property, the suitability of the Property for any uses or purposes contemplated by Buyer, the zoning of the Property, the environmental condition of the Property, the state of title to the Property and/or any other aspect of or matter pertaining to the Property or any other fact or matter whatsoever, whether pertaining to Seller, the Property, or otherwise. BUYER FURTHER ACKNOWLEDGES AND AGREES THAT (I) IT HAS FULLY EXAMINED AND INVESTIGATED TO ITS FULL SATISFACTION THE PHYSICAL NATURE AND CONDITION OF THE PROPERTY AND ALL ASPECTS THEREOF, INCLUDING, WITHOUT LIMITATION, THE ENVIRONMENTAL CONDITION OF THE PROPERTY AND SURROUNDING PROPERTIES, (II) IT SHALL ACQUIRE THE PROPERTY IN AN "AS IS, WHERE IS" CONDITION AS OF THE CLOSING DATE, (III) SELLER SHALL NOT BE RESPONSIBLE FOR MAKING (OR CONTRIBUTING IN ANY WAY TO THE COST OF MAKING) CHANGES OR IMPROVEMENTS TO THE PROPERTY, OR ANY OTHER ASPECT OF OR MATTER PERTAINING TO THE PROPERTY, AND (IV) IN EXECUTING, DELIVERING, AND PERFORMING ITS OBLIGATIONS UNDER THIS AGREEMENT, PURCHASER HAS NOT RELIED UPON ANY STATEMENT, PROMISE, REPRESENTATION, OR WARRANTY TO WHOMSOEVER MADE OR GIVEN, DIRECTLY OR INDIRECTLY, ORALLY, OR IN WRITING, BY ANY PERSON OR ENTITY, EXCEPT AS SPECIFICALLY CONTAINED IN THIS AGREEMENT.

PURCHASER EXPRESSLY WAIVES ANY RIGHT OF RESCISSION AND ALL CLAIMS
FOR DAMAGES ARISING IN CONNECTION WITH THE PROPERTY BY REASON OF
ANY STATEMENT, REPRESENTATION, WARRANTY, ASSURANCE, PROMISE, OR
AGREEMENT, IF ANY, UNLESS EXPRESSLY CONTAINED IN THIS AGREEMENT. The
provisions set forth in this paragraph 12D shall survive the closing of the transaction
contemplated under this Agreement.

13.    **Real Estate Commission.**  The Parties each represent to the other that other than
Rick Levin and Associates, Inc. there is no other broker, finder or like party (as third party
beneficiary or otherwise) shall be entitled to any commission or compensation or otherwise or be
entitled to rely on any provision herein in claiming any right to commission or compensation.
Each Party agrees to defend, indemnify and hold harmless the other Party from and against any
and all claims of any other brokers, finders or any like third party claiming any right to
commission or compensation by or through acts of such party in connection herewith. The
indemnity obligations hereunder shall include all damages, losses, risks, liabilities, and expenses
(including reasonable attorneys' fees and costs) arising from or related to matters being
indemnified hereunder.

14.    **Condemnation.**  In the event that notice of any action, suit or proceeding shall be
given for the purpose of condemning all or any portion of the Property prior to the date such
Property has been conveyed to Buyer, then Buyer's rights and obligations under this Agreement
with respect to such Property shall be terminable at Buyer's option by providing notice to Seller
within twenty-one (21) days of receipt of a notice from Seller regarding such taking, the Deposit
shall be refundable and neither party shall have any further rights, obligations, or remedies
hereunder.

15.    **Remedies.**

A.    **Buyer Default**.  If Buyer defaults under the terms of this Agreement and such
default is not a failure to close or a monetary default, then the Seller shall provide Buyer written
notice of said default ("Seller Default Notice"). Seller shall not be required to provide a Seller
Default Notice for any default arising from a failure to close. Buyer shall have ten (10) days
from its receipt of the Seller Default Notice ("Cure Period") to cure or to substantially
commence a cure of the default(s) identified in the Seller Default Notice. In the event Buyer
fails to cure, substantially commence a cure during the Cure Period or is not entitled to a Cure
Period, then Seller shall be entitled, as Seller's sole and exclusive remedy, to (i) waive the
contractual obligations of Buyer in writing; (ii) extend the time for performance by such period
of time as may be mutually agreed upon in writing by the Parties hereto; or (iii) terminate this
Contract and receive the Deposit as liquidated damages for such default and not as a penalty, as
Seller's sole and exclusive remedy, in which event the Parties shall be released herefrom and
have no further rights, obligations, or responsibilities hereunder (except with respect to Buyer's
indemnification obligations specified in this Agreement). Seller's extension of the time for
Buyer's performance pursuant to clause (ii) above shall not constitute an election of remedies and
shall not prohibit Seller's exercise of Seller's other remedies set forth above in the event Buyer
fails to cure such breach prior to the expiration of such extension period.

B.     **Seller Default.**  If Seller defaults in the performance of its obligations under this Agreement or in the event of a failure of a Closing Condition, then Buyer shall provide Seller written notice of said default ("Buyer Default Notice"). Buyer shall not be required to provide a Buyer Default Notice for any default arising from Seller's failure to close. Seller shall have ten (10) days from its receipt of a Buyer Default Notice ("Cure Period") to cure or substantially commence a cure of the default identified in the Buyer Default Notice. In the event that Seller fails to cure, substantially commence a cure during the Cure Period or is not entitled to a Cure Period, then Buyer shall be entitled, as Buyer's sole and exclusive remedy, to: (i) waive the contractual obligations of Seller in writing; (ii) extend the time for performance by such period of time as may be mutually agreed upon in writing by the Parties hereto; (iii) terminate this Contract and receive a refund of the Deposit; or (iv) enforce specific performance of this Agreement as Buyer's sole remedy at law to the exclusion of (i), (ii) and (iii). Buyer's extension of the time for Seller's performance pursuant to clause (ii) above shall not constitute an election of remedies and shall not prohibit Buyer's exercise of Buyer's other remedies set forth above in the event Seller fails to cure such breach prior to the expiration of such extension period. In the event of a Buyer termination pursuant to clause (iii) above, the Parties shall be released herefrom and have no further rights, obligations, or responsibilities hereunder (except with respect to Buyer's indemnification obligations specified in this Agreement).

v.     **Post Closing Remedies.**  It is the intent of Seller and Buyer that the sole remedies of Seller and Buyer are set out in paragraphs 15A and 15B above, except however, that for a period of one (1) year following Closing, each party shall have the right to pursue its actual damages against the other party (i) for a breach of any covenant or agreement contained herein that is performable after or that survives Closing (including any indemnification obligations of the Parties contained in this Agreement) and (ii) for a breach of any representation or warranty made by the other party in this Agreement. If the Closing does not occur, (A) each party shall have its respective rights and remedies under paragraphs 15A and 15B, as applicable, and (B) each party shall have all available remedies against the other party for a breach of the other party's obligations contained in this Agreement that are expressly provided herein as surviving the termination of the Agreement.

16.     **Attorneys' Fees.**  In the event that any litigation between the parties arises with respect to this Agreement, the prevailing party in such litigation shall be entitled to recover from the other party, as damages, the reasonable attorneys' fees incurred in connection with such litigation.

17.     **No Waiver.**  The failure of either Party to complain of any act or omission on the part of the other Party, no matter how long it may continue, shall not be deemed a waiver by any Party to any of its rights hereunder except as expressly provided for in this Agreement.

18.     **Third Party Rights.**  No party other than Seller and Buyer and their successors and assigns, shall have any right to enforce or rely upon this Agreement, which is binding upon and made solely for the benefit of Seller and Buyer, and their respective successors or assigns, and not for the benefit of any other party.

19.    **Survival**.    The representations, warranties and covenants contained in this Agreement shall survive Closing as set forth herein, and shall not merge upon the delivery of the Deed.

20.    **Time.**  TIME IS OF THE ESSENCE OF ANY AND ALL UNDERTAKINGS AND AGREEMENTS OF THE PARTIES HERETO.

21.    **Notices**.    Any notice to be given or served upon any Party to this Agreement must be in writing and shall be deemed to have been given: (i) upon receipt in the event of personal service by actual delivery; (ii) the date deposited with an overnight delivery services (such as FedEx or UPS) with proper postage; or (iii) upon confirmation of receipt if transmitted by email or facsimile. Notwithstanding anything herein to the contrary, service of notice to the attorney for a Party shall be sufficient to satisfy requirements under the terms of this Agreement, provided courtesy copies shall also be provided to the Parties.  All notices shall be given to the Parties at the following addresses:


If To Buyer:



Buyer's Attorney:    Kent Novit
Novit & Novit Law
100 N. LaSalle, Ste 1700
Chicago, IL 60602
novitlaw@covad.net


If to Seller:        Ms. Simone S. Weissbluth
WWW Investments, LLC
917 W. Washington St., suite 127
Chicago, Illinois 60607



Seller's Attorney:

Ariel Weissberg, Esq.

13

Weissberg and Associates, Ltd.
401 South LaSalle, Suite 403
Chicago, Illinois 60605
Telephone: 312-663-0004
Fax: 312-663-1514
Email: ariel@weissberglaw.com

Any Party to this Agreement may at any time change the address for notices to that Party by giving notice in this manner.

22.    **Days**.  Whenever this Agreement requires that something be done within a specified period of days, that period shall (i) not include the day from which the period commences, (ii) include the day upon which the period expires, (iii) expire at 5:00 p.m., local time on the day upon which the period expires, and (iv) unless otherwise specified in this Agreement, be construed to mean calendar days; provided that, if the final day of the period falls on a Saturday, Sunday or legal holiday, the period shall extend to the first business day thereafter.

23.    **Severability**.  If one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, that invalidity, illegality or unenforceability shall not affect any other provision of this Agreement, and this Agreement shall be construed as if the invalid, illegal or unenforceable provision had never been contained within the body of this Agreement.

24.    **Recitals and Entire Agreement**.  The recitals set forth herein are a material part of this Agreement and are hereby incorporated into this Agreement by reference.  This Agreement embodies the entire understanding between the parties with respect to the transaction contemplated herein, and all prior or contemporaneous agreements, understandings, representations, warranties and statements, oral or written, are superseded by and merged into this Agreement.  Neither this Agreement nor any of its provisions may be waived, modified or amended except by an instrument in writing signed by the Party against which enforcement is sought, and then only to the extent set forth in that instrument.

25.    **Governing Law**.  This Agreement shall be governed by and construed in accordance with the provisions of the laws of the State of Illinois.  Venue for any dispute under the terms of this Agreement shall be the Circuit Court of Cook County, Illinois.

26.    **Captions; Agreement Preparation**.  Captions to paragraphs and sections of this Agreement have been included solely for the sake of convenient reference and are entirely without substantive effect. Each of the Parties has joined in and contributed to drafting this Agreement, and the Parties agree that there shall be no presumption favoring or burdening any one or more Parties based upon draftsmanship.

27.    **Successors and Assigns**.  Buyer shall not be entitled to assign its rights or obligations under this Agreement without the consent of Seller, which consent may be withheld in Seller's sole discretion; provided that Buyer shall be entitled to assign its rights and

14

obligations under this Agreement without Seller's Consent to any entity which is controlled by Buyer or Buyer's parent entity. Subject to the foregoing, this Agreement shall be binding upon and its benefits shall inure to the Parties hereto and their respective heirs, personal representatives, successors and assigns.

28.    **Counterparts; Signatures**. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original and all of which shall constitute one agreement. The signature of any party to any counterpart shall be deemed to be a signature to and may be appended to any other counterpart. For purposes of this Agreement, a facsimile signature or electronic copy of a signature shall be deemed the same as an original.

**THIS AGREEMENT** has been executed by the Parties hereto on the date set forth above.

**"SELLER"**                                          **"BUYER"**

Chicago Title Land Trust number 8002371267           _Development Group, LLC_
under trust agreement dated May 9, 2016,
                                                     A _____ company

By:_____                         By: _Chris Deleeuw_____

Its:_____                        Its:_Owner_____

# EXHIBITS TABLE OF CONTENTS

Exhibit A- Legal Description of Property
Exhibit B- Alta Survey
Exhibit C- General Assignment
Exhibit 11(A) (ix) Seller Documents

**EXHIBIT "C"**

**GENERAL ASSIGNMENT**

THIS GENERAL ASSIGNMENT (this "**Assignment**") is made as of the ____ day of
_____, 2016, by 3324 N. Clark Street, LLC ("**Seller**"), to _____ ("**Buyer**"),
Seller and Buyer are each a "Party and collectively the "Parties".

WHEREAS, of even date herewith, Seller has conveyed to Buyer the property described
in Exhibit "A" attached hereto, together with all improvements, if any, located thereon (the land
and improvements are referred to herein collectively as the "**Property**"); and

WHEREAS, Seller and Buyer intend that Seller also convey to Buyer all of the Conveyed
Property Rights (as hereinafter defined).

NOW, THEREFORE, Seller, for and in consideration of Ten Dollars ($10.00) and other
good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged
and confessed, hereby agrees as follows:

1.      Seller has GRANTED, BARGAINED, SOLD, CONVEYED and ASSIGNED,
and by these present does hereby GRANT, BARGAIN, SELL, CONVEY and ASSIGN to Buyer
any and all of Seller's right, title and interest in and to the following, but only to the extent same
pertain to the Property ("**Conveyed Property Rights**"):

(a)      all warranties, guaranties and indemnities received from third parties, and
all claims, demands and causes of action against third parties, but only to the extent they are for
the benefit of, and applicable to, the Property or the owner thereof, including, without limitation,
any warranties, guaranties, indemnities, contractual rights, claims, demands and causes of action
pertaining to the development, construction, design or completion of the Property and/or the
common areas, streets, utilities or other subdivision infrastructure;

(b)      all licenses, permits, governmental approvals, utility commitments, utility
rights (including rights to capacity or service), drainage and detention rights, development rights
or other similar rights, inclusive of any prepaid impact fees, impact fee credits or other similar
development credits;

(c)      all rights under any plats (preliminary or final) of any portion of the
Property or any rights-of-way abutting the Property or any portion thereof, including any
boundary plats and any right-of-way plats, submitted, approved or recorded;

(d)      all unpaid awards or proceeds, including awards in connection with
insurance and any eminent domain taking; and

(e)      all other rights, powers, privileges, options, or other benefits associated
with, that pertain to, are attributable to, are appurtenant to, apply to, or which otherwise benefit
the Property.

17

TO HAVE AND TO HOLD the Conveyed Property Rights unto Buyer and Buyer's successors and assigns forever.

    2.      This Assignment shall be binding on Seller, its successors and assigns, and shall inure to the benefit of Buyer, its successors and assigns.

    3.      This Assignment does not constitute an assumption of any liability or obligation by Buyer, nor shall it be deemed to impose on Buyer any liability or obligation.

    4.      Seller and Buyer will each cooperate with each other, their employees, and agents to facilitate the purpose and intent of this Assignment including, without limitation, the providing of information and documentation that may be reasonably required for the enforcement of the rights and interests assigned hereby.

    5.      This Assignment may be executed in several counterparts, each of which shall be fully effective as an original and all of which together shall constitute one and the same instrument.

    EXECUTED as of the date set forth herein.

SELLER

3324 N. Clark Street, LLC

By:_____

Name: _____

Date: _____, 2016